United States District Court
District of Massachusetts

|                              |   |                      |
|------------------------------|---|----------------------|
| **UNITED STATES OF AMERICA**, | ) |                      |
|                              | ) |                      |
| v.                           | ) |                      |
|                              | ) | Criminal Action No.  |
| **FRANK IACABONI**,          | ) | 05-10003-NMG-3       |
|                              | ) |                      |
| Defendant.                   | ) |                      |

**MEMORANDUM & ORDER**

**GORTON, J.**

The motion pending before this Court arises out of a statement proffered by the presiding judge at the conclusion of the trial of defendant Frank Iacaboni ("Iacaboni") in April, 2009.

I. **Background**

In September, 2006, defendant was charged with nine counts of racketeering, operating an illegal gambling business, conspiracy to commit arson, arson, using fire and explosives to commit a felony, conspiracy to commit extortion and attempted extortion.

Iacaboni, along with three of his co-defendants, was tried before this Court beginning in March, 2009. The trial lasted for seven weeks. Iacaboni was ultimately convicted on eight of the counts in which he was charged and was acquitted on one of the racketeering charges.

On the 29th day of trial, after the jury began deliberations and outside of the jurors' presence, this Judicial Officer addressed the eight attorneys representing the government and the four co-defendants as follows:

> I'm going to do something that I don't normally do, but I thought it would be helpful to end on an up note rather than a down note today. I actually drafted this before the most recent scurrying around of questions that the jury posed.
>
> But, nevertheless, before a verdict is rendered and this case becomes history, I wanted to do something that is rather unprecedented but is warranted, I believe, in this case and, I hope, will become more commonplace in future cases.
>
> And I hesitate only as a client hesitates to compliment his lawyer before the bill for fees has been rendered. But I proceed, nevertheless, to commend counsel in this case for a job well-done. This was a well-tried case. We have been at work here on very serious business for seven weeks, on matters of the utmost importance to the litigants and to society as a whole.
>
> Yet, throughout this trial, you have conducted yourselves with professionalism; civilized discourse, for the most part; and even collegiality. Indeed, this trial could stand, in this Court's opinion, as an exemplar of how criminal trials are supposed to be tried, with vigorous and zealous representation of clients, conducted within the boundaries of the rules and of common decency. You are examples of the very best that the legal profession has to offer and a credit to the bar.
>
> And with that, I will stop before this degenerates into another contentious exchange and we all go home unhappy. Have a nice weekend.

Iacaboni was represented from the filing of the initial indictment in January, 2005 through the return of the jury's

verdict in April, 2009 by lead counsel Thomas J. Butters ("Attorney Butters"). Mr. Butters was assisted by Attorney Matthew D. Thompson. Attorney Alan P. Caplan filed a notice of appearance for the defendant the following month after the guilty verdict was returned against Iacaboni and has since been representing him in his post-conviction appeals and proceedings.

In November, 2009, Iacaboni was sentenced to 183 months of incarceration.

Pending before the Court is defendant's motion for recusal based upon the statement made by the Court at the end of his trial as quoted above. For the reasons that follow, the motion will be denied.

## II. **Procedural history**

After he was sentenced, defendant appealed his conviction to the United States Court of Appeals for the First Circuit which affirmed the conviction in June, 2012. The following year, defendant filed a Petition for Writ of Certiorari to the United States Supreme Court which was denied in May, 2013.

In May, 2014, defendant filed an Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 ("habeas petition"), alleging that Attorney Butters failed to provide him with effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and that there is a reasonable probability that but for the allegedly deficient

representation, he would have been acquitted on all counts of conviction.

On the same day, defendant filed the instant motion for the presiding judge to recuse himself from consideration of the habeas petition.

## III. **Defendant's motion for recusal**

Defendant asserts that in light of the statement made by the Court to all counsel after trial, the judge's impartiality might reasonably be questioned in adjudicating defendant's habeas petition in which he claims that Attorney Butters provided ineffective assistance of counsel and that a new trial is warranted.

### A.  **Legal standard**

Title 28 U.S.C. § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The statute focuses on whether a well-informed and reasonable person might question the judge's impartiality rather than on the judge's "actual state of mind." In re Bulger, 710 F.3d 42, 46 (1st Cir. 2013).

The First Circuit has consistently held that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir. 1961) (citations omitted); see also Brody v. President & Fellows of Harvard

College, 664 F.2d 10, 12 (1st Cir. 1981). The decision to allow or deny a motion for recusal is largely within the Court's sound discretion. United States v. Giorgi, 840 F.2d 1022, 1034 (1st Cir. 1988). This broad discretion protects two competing policies: on the one hand, "courts must not only be, but must seem to be, free of bias or prejudice"; on the other hand, recusal on demand would put too much power in the hands of litigants and lawyers, enabling them to veto the assignment of judges based on unsupported reason. In re United States, 666 F.2d 690, 694 (1st Cir. 1981). Compulsory recusal must therefore require more than subjective fears, unsupported accusations or unfounded surmise. See id.

Section 455(a) attempts to reconcile these two policies by requiring a judge to step down only if the charge against him is supported by a factual foundation upon which an objective and knowledgeable person would find a reasonable basis for questioning the impartiality of the judge. Id. at 695.

Grounds for recusal pursuant to Section 455(a) have generally been based on extrajudicial sources. In fact, the United States Supreme Court has held that

> [o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

-5-

Liteky v. United States, 510 U.S. 540, 555 (1994).

Furthermore, it is desirable for the trial judge to rule on a § 2255 motion claiming ineffective assistance of counsel because he would have a valuable perspective for determining the effectiveness of the counsel's assistance and whether any deficiencies were prejudicial. Massaro v. United States, 538 U.S. 500, 506 (2003); see also United States v. Martorano, 620 F.2d 912, 919 (1st Cir. 1980) ("Indeed, we have indicated it may often be advantageous to have the original judge continue on a case because of his familiarity with earlier proceedings.")

**B.   Application**

The defendant contends that the Court's remarks might lead a reasonable person to question its impartiality with respect to the effectiveness of his counsel. He asserts that after the Court 1) admitted that the statement was "rather unprecedented" and drafted prior to the delivery and 2) commended counsel "for a job well done" and "vigorous and zealous representations of clients," an objective person might question the Court's impartiality toward his counsel. Defendant cites in support of his argument a case decided by the First Circuit four years prior to Liteky which found that

> [t]he question under § 455(a) is not whether the judge's statement springs from an extrajudicial source but instead whether the judge's statement or action would lead a reasonable person to question whether the judge would remain impartial.

-6-

United States v. Chantal, 902 F.2d 1018, 1024 (1st Cir. 1990).

The government responds that the source of the bias necessitating recusal must be from extrajudicial sources and therefore the Court's statement cannot lead to a finding of bias. It notes that Courts have construed Liteky as having overruled Chantal with respect to the extrajudicial source doctrine. See United States v. Ciocca, 2000 WL 230224, at *2 n.3 (D. Me. Jan. 19, 2000) ("The Court understands *Liteky* to overrule the Court of Appeals for the Frist Circuit's holding in *United States v. Chantal* that the 'extrajudicial source' doctrine does not apply to § 455(a).") The government then contends that the other cases cited by the defendant are immaterial because they involve extrajudicial sources of potential bias as the bases for recusal. See, e.g., In re Bulger, 710 F.3d 42, 48 (1st Cir. 2013) (concerning extrajudicial information and relationships from the judge's prior career as a supervisory federal prosecutor at the same time defendant claimed he had received a secret immunity agreement from the government); Bradley v. Sugarbaker, 2013 WL 6279299 (D. Mass. Dec. 4, 2013) (concerning an extrajudicial relationship of a district judge with the hospital at which the defendant practiced).

The defendant replies that the extrajudicial source doctrine is a not an absolute rule and the fact that a statement was made in the courtroom does not mean that it cannot form the basis for recusal. He cites the dicta of Justice Scalia in his majority opinion in Liteky that

> there is not much doctrine to the doctrine [and that it is] better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor*, rather than of an "extrajudicial source" *doctrine*, in recusal jurisprudence.

Liteky, 510 U.S. at 554-55 (emphasis in the original).

The Court is not persuaded that the explanatory statement of Justice Scalia somehow negates the holding of the case that opinions formed by the judge in the course of current or prior proceedings do not constitute a basis for a recusal. Id. The gratuitous compliment of the Court proffered to counsel for the prosecution and the defense alike toward the end of trial was made during judicial proceedings and based solely on the events over which the Court presided during the trial. It did not display a "deep-seated favoritism" to either side. Id.

Without deciding the issue of whether § 455(a) is limited exclusively to extrajudicial sources of bias, the Court nevertheless concludes that its statement could not lead a reasonable person to question its impartiality.

Courts have determined that a trial judge's favorable opinion, even when developed through an extrajudicial source, of

an attorney whose effectiveness is being challenged in a habeas petition does not warrant recusal.  See, e.g., Simons v. United States, 2007 WL 1871598, at *6 (E.D.N.Y 2007) (holding that recusal was not warranted when the trial judge had formerly supervised and promoted the lawyer whose effectiveness was being challenged).  Likewise, remarks made by a judge during a trial "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555.

The remarks made by this Court on the 29th day of trial were offered in an attempt to conclude the lengthy trial "on an up note."  It was a gratuitous statement commending the professionalism, civilized discourse and collegiality of all of the attorneys during a very long trial.  The comments focused on the conduct and demeanor of counsel and did not refer or relate to the effectiveness of counsel in the representation of their clients.  Moreover, the statement was addressed to all eight attorneys representing the government and the four co-defendants who had participated in the trial.  It was not directed at Attorney Butters specifically, although it was meant to include him.  An objective person could not reasonably question the Court's impartiality with respect to the effectiveness of Attorney Butters' representation based on such a statement.

The defendant's assertion that this Court "has, in essence, pre-judged the issue of the effectiveness of defendant Iacaboni's counsel" is unwarranted. This is particularly apparent given that the basis of his habeas petition relies on conversations and strategic decisions made outside the purview of the Court. The statement made by the Court did not, and could not, reflect the assessment of the Court of Attorney Butters' strategy or alleged omissions during the trial of which it was, of course, unaware.

For example, the defendant's habeas petition emphasizes his counsel's failure 1) to allow him to testify in his own defense, 2) to hire a forensic linguist as an expert witness and 3) to pursue certain lines of questioning during the cross examination of certain witnesses. No objective, knowledgeable member of the public could reasonably believe that the compliment extended by the Court was based on an approval, or even awareness, of the specific alleged omissions or commissions made by counsel that defendant now raises in his habeas petition.

## ORDER

For the reasons set forth in the Memorandum supra, defendant's motion for recusal (Docket No. 979) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton<br>Nathaniel M. Gorton<br>United States District Judge

Dated October 10, 2014